IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee,  *Plaintiffs,*  v.  COMMODORE CARTAGE COMPANY, A Michigan corporation,  *Defendant.* | Case No. 25-cv-3529  Judge Manish S. Shah  Magistrate Judge Gabriel A. Fuentes |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and Charles A. Whobrey, Trustee, submit this Memorandum in Support of their Motion for Summary Judgment against Defendant Commodore Cartage Company ("Commodore"). The Pension Fund filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 et seq., to collect withdrawal liability and related statutory damages from Defendant.

Commodore has admitted all material facts, such that summary judgment is appropriate. Specifically, Commodore admits that it effected a complete withdrawal from the Pension Fund and that it owes the Pension Fund withdrawal liability in the principal amount of $1,260,423.93. Commodore also admits having received both a notice and demand for payment of the withdrawal liability, as well as a past due notice, and admits that it dismissed with prejudice an arbitration it had initiated to dispute the withdrawal liability. Accordingly, and as Commodore has admitted, it

fell into default. As a result, any disputes Commodore may have had with the withdrawal liability assessment have been waived. 29 U.S.C. § 1401(b)(1); *Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 529 (7th Cir. 1997). Accordingly, summary judgment should be granted against Commodore and in favor of Plaintiffs.

## I.     STATUTORY BACKGROUND

Congress enacted ERISA in 1974 to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before they had accumulated sufficient funds. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 607, 113 S. Ct. 2264, 2271 (1993). To address the debilitating effect that employer withdrawals have on multiemployer plans, Congress passed MPPAA, 29 U.S.C. §§ 1381-1461. *Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 486 (7th Cir. 2000). MPPAA provides that when an employer withdraws from a multiemployer plan, it must pay "withdrawal liability" in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits, which is the difference between the present value of a pension plan's assets and the present value of the benefits it will be obligated to pay in the future. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 217, 106 S. Ct. 1018, 1022 (1986); 29 U.S.C. §§ 1381, 1391.

To collect withdrawal liability, a plan must first determine the amount of withdrawal liability owed by a withdrawing employer. 29 U.S.C. § 1382; *Cent. States, Se. & Sw. Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994). The plan must then send the employer a notice and demand for payment. 29 U.S.C. § 1399(b)(1); *Bell Transit*, 22 F.3d at 707. Subject to the statutory deadlines discussed in further detail below, the employer may ask the plan to review its assessment, and, if dissatisfied with the review, the employer may initiate arbitration to

challenge the withdrawal liability assessment. 29 U.S.C. §§ 1399(b)(2) and 1401(a)(1); *Bell Transit*, 22 F.3d at 707. Arbitration of disputes concerning a plan's determination of withdrawal liability is mandatory; therefore, if the employer fails to initiate arbitration, the assessment becomes due and owing, and the plan may sue to collect it. 29 U.S.C. § 1401(b)(1); *Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 848 (7th Cir. 2015) ("Failure to initiate arbitration has a simple and adverse consequence – withdrawal is conclusively established and the amount demanded by the pension plan becomes due and owing"); *Bell Transit*, 22 F.3d at 707. In other words, where the employer fails to initiate arbitration, "the plan can immediately file suit to collect the entire amount of withdrawal liability, and in that proceeding the employer will have forfeited any defenses it could have presented to the arbitrator." *Trs. of Suburban Teamsters of N. Ill. Pension Fund v. E Co.*, 914 F.3d 1037, 1039 (7th Cir. 2019) (citation omitted).

MPPAA ordinarily allows an employer to pay its withdrawal liability in accordance with a payment schedule. 29 U.S.C. § 1399(c)(2); *Cent. States, Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 770 (7th Cir. 2010). However, a plan can require immediate payment of the entire outstanding withdrawal liability principal in the event of an employer's "default." 29 U.S.C. § 1399(c)(5); *O'Neill Bros.*, 620 F.3d at 771. A "default" occurs either: (i) when the employer does not timely make a withdrawal liability payment and fails to cure within 60 days of receiving written notice from the plan advising of the missed payment, 29 U.S.C. § 1399(c)(5)(A), or (ii) upon the occurrence of any event defined by the rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability, 29 U.S.C. § 1399(c)(5)(B). This case is predicated upon a non-payment default.

## II. FACTUAL BACKGROUND

The Pension Fund is a multiemployer pension plan within the meaning of ERISA and is administered at 8647 West Higgins Road in Chicago, Illinois. (Paragraphs 3 and 4 of Plaintiffs' L.R. 56.1(a)(3) Statement of Material Facts ("SMF ¶ __".)) Plaintiff Charles A. Whobrey is a present trustee and fiduciary of the Pension Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of 29 U.S.C. § 1301(a)(10). (SMF ¶ 4.) At all relevant times, Defendant Commodore, a Michigan corporation, was bound by collective bargaining agreements with a certain local union affiliated with the International Brotherhood of Teamsters under which Commodore was required to remit contributions to the Pension Fund on behalf of certain of its employees. (SMF ¶¶ 6-7.)

The Pension Fund determined that on or about December 16, 2012, Commodore permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of 29 U.S.C. § 1383. (SMF ¶ 8.) As a result of the complete withdrawal, Commodore incurred withdrawal liability to the Pension Fund in the principal amount of $1,339,332.93, as determined under 29 U.S.C. § 1381(b). (SMF ¶ 9.) On or about January 25, 2013, Commodore received a notice and demand for payment of the withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1). (SMF ¶ 10.) In the notice and demand, the Pension Fund notified Commodore that it was required to discharge its withdrawal liability in a lump sum payment of $1,339,332.93 or in monthly payments, with the first payment due on or before February 1, 2013. (SMF ¶ 11.)

Commodore remitted the payments that were due on or before the first day of each month for the period of February 1, 2013 through July 1, 2024. (SMF ¶ 12.) However, Commodore has

not made any further withdrawal liability payments, including its monthly withdrawal liability payment that was due on or before August 1, 2024. (SMF ¶ 12.) On or about December 20, 2024, Commodore received a notice from the Pension Fund, pursuant to 29 U.S.C. § 1399(c)(5)(A), advising that its withdrawal liability payments were past due, and which forewarned Commodore of the consequences of its failure to pay such withdrawal liability. (SMF ¶ 13.) Since receiving the past due notice, Commodore has not made any payments. (SMF ¶ 14.)

Although Commodore had initiated arbitration pursuant to 29 U.S.C. § 1401(a)(1) to dispute the withdrawal liability, Commodore later dismissed the arbitration with prejudice. (SMF ¶ 15.) Consequently, the amounts demanded by the Pension Fund are due and owing pursuant to 29 U.S.C. § 1401(b)(1). (SMF ¶ 15.) Commodore failed to make the required withdrawal liability payments to the Pension Fund and fell into default within the meaning of 29 U.S.C. § 1399(c)(5). (SMF ¶ 16.)

### III. ARGUMENT

#### A. The material facts are undisputed, and summary judgment should be granted in the Pension Fund's favor.

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001).

All the material facts in this case are undisputed, Defendant has admitted liability, and the governing law establishes that the Pension Fund is entitled to summary judgment. As noted, to collect withdrawal liability, a pension fund must determine the amount of the employer's withdrawal liability and send the employer a notice and demand for payment of the liability. 29

U.S.C. §§ 1382, 1391, 1399(b)(1); *Cent. States, Southeast & Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 888 (7th Cir. 1992). If the employer disagrees with the withdrawal liability assessment, the employer may request review and initiate arbitration to dispute the withdrawal liability. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1); *Ditello*, 974 F.2d at 888. If the employer fails to timely initiate arbitration, then the amounts demanded by the plan become due and owing and the plan may file a lawsuit to collect the liability. 29 U.S.C. § 1401(b)(1); *Ditello*, 974 F.2d at 888; *see also Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 262 (2d Cir. 1990) (also noting that "'any dispute' concerning the notice or the amount of withdrawal liability 'shall be resolved through arbitration'"). In this case, the undisputed, indeed admitted, facts show that Commodore permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased covered operations, thereby effecting a "complete withdrawal" from the Pension Fund. (SMF ¶ 8.) The undisputed facts further show that Commodore received a notice and demand for payment of the liability, as required by 29 U.S.C. § 1399(b)(1). (SMF ¶ 10.) And although Commodore had initiated arbitration to contest the withdrawal liability, it subsequently dismissed the arbitration with prejudice, thereby conclusively waiving all potential defenses to the assessment in arbitration. (SMF ¶ 15; *ManWeb Servs., Inc.*, 794 F.3d at 848.)

It is further undisputed and admitted that although Commodore made several partial payments toward its withdrawal liability through July 1, 2024, it made no further payments thereafter. (SMF ¶ 12.) Moreover, on or about December 20, 2024, Commodore received a notice from the Pension Fund pursuant to 29 U.S.C. § 1399(c)(5)(A) advising that its withdrawal liability payments were past due. (SMF ¶ 13.) Accordingly, and as Commodore has also admitted, Commodore fell into default within the meaning of 29 U.S.C. § 1399(c)(5)(B) because it failed to

cure its nonpayment within 60 days of having received the Pension Fund's past due notice on or about December 20, 2024. (SMF ¶ 16.)

Therefore, the evidentiary record is undisputed, and summary judgment should be granted in the Pension Fund's favor. The only factual allegation in the Complaint that Commodore did not admit (it simply asserted that it lacked sufficient information to admit the allegation) concerns the principal balance of the withdrawal liability. However, the Pension Fund served Commodore with a request for admission on September 29, 2025, concerning the principal balance of the withdrawal liability, and Commodore failed to respond to such request within 30 days (and has still not responded). (SMF ¶ 17.) Accordingly, under Rule 36(a)(3) of the Federal Rules of Civil Procedure, the principal balance of Commodore's withdrawal liability is deemed admitted. In any event, the undisputed facts also demonstrate that although Commodore made several payments with respect to the withdrawal liability, those payments did little to reduce the principal balance of Commodore's withdrawal liability, which principal balance is $1,260,423.93. (SMF ¶ 21.)

**B.     Plaintiffs are entitled to the damages provided for in 29 U.S.C. § 1132(g)(2) and post-judgment interest.**

Under 29 U.S.C. § 1132(g)(2), "the court shall award the plan" the following relief when it prevails in an action under 29 U.S.C. § 1145, as incorporated by 29 U.S.C. § 1451(b): the unpaid withdrawal liability, interest, damages of the greater of interest or liquidated damages as provided under the plan, not to exceed 20% of the principal delinquency, reasonable attorney's fees and costs, and such other relief as may be appropriate. The damages awarded under 29 U.S.C. § 1132(g)(2), made applicable to cases involving withdrawal liability pursuant to 29 U.S.C. § 1451(b), are mandatory. *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992).

Under the Fund's Trust Agreement, the Pension Fund computes and charges interest on delinquent withdrawal liability at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, N.A. for the fifteenth (15th) day of the month for which interest is charged. (SMF ¶ 18.) Furthermore, the Pension Fund's Trust Agreement provides for liquidated damages in the amount of 20% of the delinquent withdrawal liability. (SMF ¶ 19.) Finally, under the Pension Fund's Trust Agreement, the Pension Fund is entitled to post-judgment interest on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, N.A. for the fifteenth day of the months for which the interest is charged, compounded annually. (SMF ¶ 20.) Accordingly, Plaintiffs request that this Court, in addition to awarding the Pension Fund the outstanding principal on Commodore's past due withdrawal liability, award the Pension Fund interest on the past due withdrawal liability, an amount equal to the greater of the interest or liquidated damages in the amount of 20% of the unpaid principal amount, attorney's fees and costs, and post-judgment interest.

## IV. CONCLUSION

Commodore has admitted all material factual allegations in the Complaint, and it has also admitted the amount of its unpaid withdrawal liability. The undisputed facts demonstrate that Commodore withdrew from the Pension Fund, received proper statutory notice, failed to dispute the liability in arbitration, and fell into default for non-payment. Therefore, Plaintiffs are entitled to summary judgment in their favor and against Commodore for the unpaid principal balance of the Withdrawal Liability ($1,260,423.93), plus interest, an amount equal to the greater of the interest or liquidated damages in the amount of 20% of the unpaid withdrawal liability, reasonable attorney's fees and costs, and post-judgment interest at the rate provided in the Pension Fund's

Trust Agreement. Plaintiffs request two weeks from the date of this Court's granting of summary judgment to submit affidavits and a proposed judgment order establishing these amounts.[1]

Respectfully submitted,

*/s/ Cara M. Anthaney*
(ARDC #6304583)
CENTRAL STATES FUNDS
Law Department
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
847-939-2367
canthane@centralstatesfunds.org

December 30, 2025                  *ATTORNEY FOR PLAINTIFFS*

---

1. Plaintiffs have not provided evidence establishing these amounts because the interest due changes daily. Thus, any amounts provided today would be inaccurate on the date a judgment is entered in this case.